# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| vs. | ) Criminal No. 10-117 |
| | ) Judge Nora Barry Fischer |
| JASON MORENO, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

I. INTRODUCTION

This case returns to the Court to resolve the parties' disputes as to the potential imposition of additional restitution against Defendant Jason Moreno and the scope of any proceedings to be held thereon. Presently before the Court are Defendant's Motion for Resolution of Restitution on the Papers, or in the Alternative, for Limitation of the Government's Witnesses, (Docket No. 228), the Government's Response in opposition, (Docket No. 231), and Defendant's Reply, (Docket No. 232). After careful consideration of the parties' arguments and for the following reasons, Defendant's Motion [228] is GRANTED and the Government's restitution claims are DENIED.

II. BACKGROUND

By way of background, Defendant was convicted at trial of seven counts related to a mortgage fraud scheme wherein he and his company, Platinum Appraisals, prepared fraudulent appraisals for more than one hundred real estate transactions. (Docket No. 120). At the initial sentencing in February of 2014, the Court granted Defendant's motion for a variance from the advisory guidelines range of 135-168 months' imprisonment and sentenced him to concurrent terms of 96 months' incarceration and 3 years' supervised release, at each count. (Docket Nos.

142; 143). Defendant was ordered to pay $20,000.00 in restitution to an individual victim, C.B.,[1] and a $700.00 special assessment. (*Id.*). This Court also held that "if further Restitution for victims is sought by the Government, it shall be incumbent on the United States to Petition the Court to set a Hearing to accept evidence as to same in accordance with Title 18 U.S.C. 3664(d)(5) and *Dolan v. United States*, 130 S. Ct. 2533 (2010)." (Docket No. 143). Despite this Court's Judgment, the Government did not petition this Court to set a hearing on restitution for any additional victims during the remainder of 2014 or at any time during 2015. (*See generally* Docket Report Crim. No. 10-117).

Defendant appealed his convictions and sentence, raising three discrete issues: (1) that his convictions should be vacated due to a violation of the hearsay rule during the trial; (2) that his sentence should be vacated as a result of an alleged misapplication of a guidelines enhancement for the number of victims; and, (3) that his sentence should be vacated because the Court permitted the prosecutor to cross-examine him after his allocution. *See United States v. Moreno*, 809 F.3d 766 (3d Cir. 2016). The government did not file a cross-appeal. *Id.* The Court of Appeals upheld Defendant's convictions and rejected his challenge to the guidelines enhancement but the matter was "remand[ed] for resentencing based on the violation of Moreno's right of allocution." *Id.* at 769. The Court of Appeals issued its mandate on January 27, 2016, directing this Court to vacate the judgment of sentence and conduct further proceedings "in accordance with the opinion of this Court." (Docket No. 178).

Thereafter, this Court held a resentencing hearing on July 18, 2016 at which time the Court accepted evidence from the parties and Defendant was permitted to allocute free of cross-

---

[1] C.B. was the buyer of the property at 28 Starr Road, for which Defendant was charged at Count 3 of the Superseding Indictment. The Court recalls that Defendant was an investor on this property and his company prepared the appraisal.

examination by the prosecutor. (Docket Nos. 211; 212). The parties agreed that the advisory guidelines range remained 135-168 months' incarceration, as it was at the initial sentencing hearing. (Docket Nos. 188; 189). The Court granted Defendant's motion for a variance from the advisory guidelines range and sentenced him to concurrent terms of 72 months' imprisonment, and 3 years' supervised release, at each count. (*Id.*). Once again, Defendant was ordered to pay restitution in the amount of $20,000.00 to the individual victim, C.B., and a $700.00 special assessment. (*Id.*). Neither party appealed this sentence and it is now final.

As part of the resentencing proceedings, on April 14, 2016, the Government submitted victim impact statements from 8 different borrowers who had purchased homes from George Kubini and/or Dov Ratchkauskas and entities that they controlled and for which fraudulent appraisals were prepared by Defendant and his company. (Docket Nos. 184-1; 213). These victim impact statements were obtained by the Government in March and April of 2015 as part of the ongoing sentencing litigation with Kubini, Ratchkauskas and others at Criminal Number 11-14. (*Id.*). The Government made no reference to restitution in its submission and initially only argued that this information was relevant to counter Defendant's renewed motion for a variance and request for a sentence below that imposed at the initial sentencing hearing. (Docket Nos. 184; 188; 207). However, prior to the resentencing hearing the Government asserted via email that it was seeking restitution on behalf of the 8 borrowers who had submitted victim impact statements. (*See* Docket No. 207). This posture engendered disputes between the parties and led the Court to defer consideration of the restitution claims until after the sentencing hearing. (Docket Nos. 205; 207; 208; 209). The Court explicitly stated that it would address the "remaining restitution claims filed at Docket No. 184-1" at a further hearing. (Docket Nos. 212; 214).

Subsequently, the parties filed briefs, witness lists and exhibits in anticipation of the Court's previously scheduled restitution hearing which the Court has since postponed. (Docket Nos. 223; 224; 225; 226; 227). As part of its submissions, the Government listed 30 potential witnesses and insists that it will seek restitution on behalf of not only the 8 individuals who have submitted victim impact statements but also others who have not yet done so if they appear to testify at the hearing. (Docket Nos. 223; 224). Defendant objects to the scope of these submissions and argues that the matter can be resolved without the need for a hearing because there are no disputed facts and the claims raised seek consequential damages that are not properly awarded as restitution. (Docket Nos. 228; 232).

III. DISCUSSION

Before the Court may address the merits of the parties' disputes, it must first determine if the restitution claims are properly before this Court given the procedural posture of this case. It is well established that upon remand from the Court of Appeals it is this Court's responsibility to consult the mandate of the Court of Appeals and to determine the scope of proceedings authorized thereunder. *See United States v. Kennedy*, 682 F.3d 244, 253 (3d Cir. 2012). The so-called "mandate rule" provides that "on remand for further proceedings after [a] decision by an appellate court, the trial court must proceed in accordance with the mandate and the law of the case as established on appeal." *Id.* at 252-53 (citing *Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 949 (3d Cir. 1985)). "A trial court must implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." *Id.* In the context of a resentencing proceeding, the Court is to determine if the proceedings are to be conducted *de novo* or limited to the issues that were the subject of the remand order. *See United States v. Miller*, 594 F.3d 172, 179 (3d Cir. 2010); *see also United States v. Walpole*, 599

F. App'x 56, 58 (3d Cir. 2015) (citing *United States v. Ciavarella*, 716 F.3d 705, 735 (3d Cir. 2013)). Further, "[a] party may not litigate on remand or subsequent appeal issues that 'were not raised in [the] party's prior appeal and that were not explicitly or implicitly remanded for further proceedings.'" *United States v. Smith*, 751 F.3d 107, 122 (3d Cir. 2014) (quoting *Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 203 (3d Cir. 2004)).

Having reviewed this precedent in light of the facts and circumstances of the remand ordered in this case, it is this Court's opinion that the Court of Appeals' mandate was limited to conducting a limited resentencing hearing for the express purpose of correcting the errors committed during Defendant's allocution. *See Miller*, 594 F.3d at 179; *see also Ciavarella*, 716 F.3d at 735. This Court further holds that the proceedings authorized under the mandate have now been completed and that it would exceed the authority conferred on it by the Court of Appeals to continue any farther with the instant restitution proceedings. *See Smith*, 751 F.3d at 121-22.

In reaching these decisions, the Court finds that the posture of this matter is akin to the situation in *United States v. Smith*, 751 F.3d 107, 121-22 (3d Cir. 2014)[2] wherein the Court of Appeals held that the District Court exceeded the scope of its mandate in revisiting a restitution order without explicit authority to do so. The relevant facts of Smith's case were as follows. At the initial sentencing, Smith was ordered to pay restitution to two banks but not a third bank. *Id.* at 121. Neither party appealed that decision. *Id.* On appeal, Smith convinced the Court of Appeals that the District Court erred on two sentence-related issues: (1) the application of the guidelines enhancement for number of victims; and (2) the computation of his criminal history category. *Id.* When the case returned to the District Court on remand, both parties argued the

---

[2] The Court notes that the *Smith* decision was cited by the Court of Appeals in *Moreno*, albeit for different legal principles related to the challenged enhancement for number of victims. *See Moreno*, 809 F.3d at 776.

5

merits of the restitution order with Smith taking the position that he should not owe restitution to any of the three banks and the Government arguing that restitution should be ordered to all three of the banks. *Id.* The District Court agreed with the Government's position and imposed restitution as to all three of the banks. *Id.*

After the resentencing hearing, Smith once again appealed and argued that the restitution order should be vacated in its entirety. *Smith*, 751 F.3d at 122. The Court of Appeals agreed with the Government that the District Court exceeded the scope of its mandate by revisiting the issue of restitution at all, vacated that aspect of the judgment and re-imposed the initial restitution order as to the two banks. *Id.* The Court of Appeals also held that the parties had waived any objections to the initial restitution order by failing to raise it on appeal and that they were barred from litigating issues related to restitution before the District Court on remand. *Id.*

The facts of this case are strikingly similar to *Smith* and compel this Court to reach the same result. To this end, this Court's restitution order was limited to the payment of $20,000.00 to one individual victim, C.B. (Docket No. 143). The Court also held that it was unable to determine the amount of restitution owed to any other victims. (*Id.*). Neither party appealed the restitution portion of the Court' Judgment. The Court of Appeals' mandate directed this Court to hold a resentencing hearing; correct the errors committed during Defendant's allocution; and, resentence him. *Moreno*, 809 F.3d at 769. Simply put, "[a]t no point did [the Court of Appeals] authorize the parties to reargue or the District Court to revisit its ruling on the amount of restitution ordered against [Defendant]." *Smith*, 751 F.3d at 122. Hence, the litigation of the 8 restitution claims that have been made – or any additional ones that the Government seeks to develop at a hearing – was not authorized by the Court of Appeals. As in *Smith*, any restitution

6

judgment entered by this Court would be vacated on appeal, making any further proceedings unnecessary. *Id.*

In a similar vein, this Court's Judgment from the initial sentencing entered on February 13, 2014 established explicit procedures for the Government to follow in the event that it sought restitution for additional victims but the Government did not heed this Court's directives. (Docket No. 143). Specifically, this Court ordered that "if further Restitution for victims is sought by the Government, it shall be incumbent on the United States to Petition the Court to set a Hearing to accept evidence as to same in accordance with Title 18 U.S.C. 3664(d)(5) and *Dolan v. United States*, 130 S. Ct. 2533 (2010)." (Docket No. 143). "[T]his Court retains the inherent authority to interpret its own Orders." *United States v. Kubini*, 304 F.R.D. 208, 214 (W.D. Pa. Jan. 5, 2015) (citations omitted). In this Court's estimation, the Judgment placed the burden on the Government to petition the Court to set a hearing for any restitution claims for additional victims within § 3664(d)(5)'s 90-day time limitation. *See* 18 U.S.C. § 3664(d)(5).[3] Further, the Court's reference to *Dolan* merely denotes the authority of the Court to award restitution outside of the 90-day period in certain circumstances such as if the victim and the amount of restitution were timely identified by the Government within that period and the Court was unable to schedule proceedings due to other matters on its docket. *See United States v. Ottaviano*, 738 F.3d 586, 599 (3d Cir. 2013) (citing *Dolan*, 560 U.S. 605, 130 S.Ct. 2533, 2537)

---

[3] Section 3664(d)(5) provides:
> If the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing. If the victim subsequently discovers further losses, the victim shall have 60 days after discovery of those losses in which to petition the court for an amended restitution order. Such order may be granted only upon a showing of good cause for the failure to include such losses in the initial claim for restitutionary relief.

18 U.S.C. § 3664(d)(5).

("*Dolan* held that the federal restitution statute, 18 U.S.C. § 3664(d)(5), does not divest the District Court of the authority to order restitution in situations such as this one, where the sentencing court made clear prior to the deadline's expiration that it would order restitution and the defendant did not ask the court to grant a timely hearing within the 90–day window."). But, those are not the circumstances of the present case.

Here, the Government neither sought reconsideration of this Court's initial Judgment nor timely presented restitution claims for additional victims as the Court ordered. (*See generally* Docket Report Cr. No. 10-117). Instead, the Government submitted the additional restitution claims against Defendant for the first time on April 14, 2016 or approximately 2 years and 2 months after the original sentencing on February 12, 2014. (*See* Docket Nos. 184-1; 213). The Government has made no effort to demonstrate good cause for failing to timely bring these claims within 90 days of the initial sentencing as the Court instructed and has not otherwise provided any explanation for the significant delays.[4] *See* 18 U.S.C. § 3664(d)(5) (requiring good cause for a victim's failure to bring losses to the Court's attention 60 days after they are discovered); *cf. Smith*, 751 F.3d at 114 ("[A] party that seeks to reopen a proceeding must provide a reasonable explanation for its failure to initially present the evidence."). Further, there is no evidence that the Government's delays were caused in any way by Defendant. *See United States v. Terlingo*, 327 F.3d 216, 222 (3d Cir. 2003) (Section 3664(d)(5) "is designed to protect the interests of the defendant's victims, and injustice will result if the dictates of the statute can be avoided by a delay caused by the actions of the defendant, in bad faith or not. If the defendant

---

[4] It is doubtful that good cause could be established on this record given that the 8 restitution claims are all dated March or April of 2015 but were not attempted to be admitted into these proceedings until over 1 year later. (Docket No. 225). In addition, a cursory review of the losses claimed therein demonstrate that they were not newly discovered by the victims even in March or April of 2015 because they seek recompense for losses that allegedly occurred many years before the initial sentencing hearing. (*Id.*).

played no significant part in causing the delay, however, equitable tolling will not be available.").

In short, it is apparent to the Court that the Government has attempted to revisit the restitution order against Defendant only because the matter was remanded after his successful appeal. The reasons for the reversal following the initial sentencing had nothing to do with restitution and the error identified by the Court of Appeals necessitating the remand has been rectified at the resentencing hearing. *Moreno*, 809 F.3d at 769. All told, this Court believes that it has fulfilled its mandate from the Court of Appeals, meaning that the prosecution of Defendant has now come to its conclusion and no further proceedings as to restitution are authorized or otherwise warranted. *Smith*, 751 F.3d at 122.

Even assuming that the procedural posture of this case permitted the Court to consider the restitution claims now, Defendant's various objections to same are well-taken and would be sustained based on the present record. The Court briefly explains its rationale.

Although 18 U.S.C. § 3663A(a)(2) defines "victim" more broadly for conspiracy offenses and scheme-based offenses such as mail and wire fraud, *United States v. Fallon*, 470 F.3d 542, 549, n.3 (3d Cir. 2006), "[t]he conduct underlying the offense of conviction ... stakes out the boundaries of the restitutionary authority," *United States v. Akande*, 200 F.3d 136, 138 (3d Cir. 1999). Hence, while "judges normally may use any information they possess to enhance a sentence, 'restitution is a special case,' because the statutes limit the losses caused by the offense of conviction." *Id.* at 143. The restitution statute permits the recovery of losses by victims but in fraud-type offenses, the "proper amount of restitution is the amount wrongfully taken by the [d]efendant." *United States v. Bryant*, 655 F.3d 232, 254 (3d Cir. 2011). Accordingly, an award of restitution cannot include victims' consequential damages and must be limited to "an amount

9

pegged to the *actual* losses suffered by the victims of the defendant's criminal conduct," and "based upon *losses directly resulting* from such conduct." *United States v. Quillen*, 335 F.3d 219, 222 (3d Cir. 2003) (emphasis in original) (quoting *Gov't of V.I. v. Davis*, 43 F.3d 41, 45 (3d Cir. 1994)); *see also Robers v. United States*, __ U.S. ____, 134 S. Ct. 1854, 1859 (2014) ("the [restitution] statute has a proximate cause requirement," § 3663A(a)(2)), [and] "[t]he basic question that a proximate cause requirement presents is whether the harm alleged has a sufficiently close connection to the conduct at issue."). "If the victim's loss is at issue, the government has the 'burden of demonstrating the amount of the loss sustained by a victim as a result of the offense' by a preponderance of the evidence." *United States v. Dodd*, 978 F. Supp. 2d 404, 418-19 (M.D. Pa. 2013), *appeal dismissed* (Apr. 29, 2014) (citing 18 U.S.C. § 3664(e); *United States v. Lopez*, 503 F. App'x. 147, 149 (3d Cir. 2012)).

Relevant here, the Superseding Indictment against Defendant is narrowly drafted, charging at Count One that, from in and around November 2005 until in or around November 2007, he and Robert Arakelian engaged in a conspiracy to submit two types of fraudulent documents to lenders, causing them to fund real estate transactions, i.e., appraisals that fraudulently elevated the value of the properties; and settlement statements that misrepresented that buyers were making down payments on the properties.[5] (Docket No. 39). The victim

---

[5] The Court notes that none of the buyers seeking restitution are the victims of Counts Two through Seven. To this end, Count Two charged Defendant with a separate conspiracy involving James Platts. (Docket No. 39). Counts Three through Seven alleged that Defendant and Arakelian were involved in a scheme to submit fraudulently elevated appraisals to lenders and misrepresent that the buyers made down payments on the properties. (Docket No. 39). However, none of the buyers in the five transactions listed in Counts Three through Seven have pending restitution claims. As noted above, the buyer in Count Three, C.B. was awarded restitution at the initial sentencing because Defendant not only prepared the appraisal but was also an investor in that property. The buyer in Counts Four and Six, Daniel Hoey, was Arakelian's brother-in-law and he (Hoey) pled guilty to wire fraud conspiracy in violation of 18 U.S.C. § 1349 and was sentenced to 18 months' imprisonment. (*See* Crim. No. 09-200). The buyer of the Rutherford Avenue property was Defendant's mother. Finally, the buyer of the Stayton Street property at Count Seven, J.P., submitted victim impact statements at both the initial sentencing and the resentencing but never made a claim for restitution.

impact statements prepared by the buyers do not mention Defendant at all, likely because they were submitted for the *Kubini* case. (*See* Gov. Exs. B-M). The buyers also do not seek the return of any money that was wrongfully taken by Defendant in the course of his (or his company's) dealings with them which would constitute direct losses, proximately caused by the charged conduct. *See Bryant*, 655 F.3d at 254.

Rather, the Government is seeking restitution for buyers in the following categories: "unexpected expenses;" "improvement expenses;" "mortgage payments during course of loan;" "outstanding mortgage balance difference;" and, "miscellaneous expenses." (Gov. Ex. A.). All of these claims relate in some fashion to the condition of the properties or the ability of the buyers to pay for the loans, making them analogous to the conduct alleged in the much more broadly drawn Superseding Indictment filed against *Kubini et al.*, at Criminal Number 11-14. *See United States v. Kubini, et al.*, Superseding Indictment, Docket No. 92. Indeed, the Superseding Indictment in that case charges, among other things, that:

- Robert Arakelian, Rhonda Roscoe and Rochelle Roscoe "falsely represented that the borrowers were intending to make payments at the time of the closings related to the purchase of the properties and that they had sufficient assets to make those payments from their own funds;"

- Sandra Svaranowic "prepared appraisals that falsely represented the condition of the properties serving as collateral for the loans;" and,

- George Kubini and Dov Ratchkauskas "falsely represented to the purchasers of the properties that they would make improvements to the properties."

(*Id.*). The *Kubini* defendants also entered into plea agreements with the Government which expanded the scope of restitution beyond the offenses of conviction.[6] *See Akande*, 200 F.3d at

---

6 The relevant clauses in the plea letters state:

11

140, n.3. As Defendant points out, two of the buyers, A.S. and C.M., were parties to transactions wherein Riverside Mortgage was the broker and not Arakelian, putting those particular claims even farther beyond the scope of the offenses charged against Defendant here. "Because the government has control over the drafting of the [Superseding Indictment], it bears the burden of including language sufficient to cover all acts for which it will seek restitution." *Akande*, 200 F.3d at 142 (quotation omitted). The Government failed to include the broader language in the Superseding Indictment against Defendant but it is seeking restitution for conduct that is not explicitly charged therein.

Beyond these deficiencies, the Government's position as to the restitution claims has been a veritable moving target in that its counsel initially asserted on July 14, 2016, prior to the resentencing, that the Government "intends to rely on the record already before the Court" to meet its burden to prove restitution in this case. (Docket No. 207). However, the Government's strategy has changed dramatically after discovery was produced to Defendant and he has lodged strong objections to the actual amounts of restitution that have been claimed by the buyers. (*See* Docket No. 226). To that end, the Government now contests Defendant's proposal that the restitution claims be submitted to the Court on the present record. (Docket No. 230). Further, despite the fact that the Court expressly set the hearing for the purpose of resolving any objections to the 8 claims that were made before the resentencing hearing, the Government has listed 30 potential witnesses that it may call, including numerous buyers who have not even submitted victim impact statements, two case agents and a paralegal from the U.S. Attorney's Office. (Docket No. 224). Based on the Court's experience in *Kubini*, wherein a day and a half

---

> Because the offense of conviction was part of a scheme of criminal activity, restitution is not limited to the offenses of conviction. The Court may order that restitution be paid to any victim, person, or party directly harmed by Defendant's criminal conduct in the course of the scheme.

was required to hear the testimony of 4 buyers, and several days were necessary to hear from the case agents, it is more than reasonable to conclude that lengthy and complicated proceedings would ensue if the parties proceeded to litigate these restitution claims at a hearing.

The Court of Appeals has recognized that in enacting the restitution statute "Congress did not want sentencing to become a forum for determination of issues better suited to civil proceedings." *Akande*, 200 F.3d at 141. In fact, the statute provides that restitution may be denied if "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." 18 U.S.C. § 3663A(b)(3)(B). Thus, the Court would alternatively deny restitution to the buyers under § 3663A(b)(3)(B) given all of the circumstances described herein, including: the limited remand by the Court of Appeals for resentencing which has already occurred to this Court's satisfaction; the Government's failure to timely present the claims under the initial Judgment; the scope of the restitution claims extending well beyond the conduct with which Defendant is charged in the Superseding Indictment; the need for lengthy and complicated proceedings to resolve intricate factual disputes between the parties; and, the potential availability of a restitution remedy for the buyers from the *Kubini* defendants. In light of all of these factors, the restitution claims would be denied if they were properly before the Court.

IV. CONCLUSION

Based on the foregoing, Defendant's Motion [228] is GRANTED and the Government's Restitution Claims are DENIED, without prejudice to the buyers pursuing such claims in *United States v. Kubini et al.*, Crim. No. 11-14. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer, U.S. District Judge

Dated: December 9, 2016

cc/ecf: Brendan T. Conway, Asst. U.S. Atty.
Brett G. Sweitzer, AFPD
Jason Moreno (USM # 35012-068) c/o Brett G. Sweitzer, AFPD